914 F.2d 125
 135 L.R.R.M. (BNA) 2419, 116 Lab.Cas. P 10,287
 Savino DeSANTIAGO and Larry Colton, Appellants,
v.
LABORERS INTERNATIONAL UNION OF NORTH AMERICA, LOCAL NO.
1140, a Labor Organization, Appellee,
Jack DEVAULT, Appellant,
v.
LABORERS INTERNATIONAL UNION OF NORTH AMERICA, LOCAL NO.
1140, a Labor Organization, Appellee.
 No. 89-1911.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 17, 1990.
Decided Sept. 10, 1990.
 
 Lyle A. Rodenburg, Council Bluffs, Iowa, for appellants.
 Dennis M. McElwain, Sioux City, Iowa, for appellee.
 Before LAY, Chief Judge, HENLEY, Senior Circuit Judge, and BOWMAN, Circuit Judge.
 HENLEY, Senior Circuit Judge.
 
 
 1
 The questions raised in this appeal are (1) whether this lawsuit brought by Savino DeSantiago, Larry Colton and Jack Devault against their local union, Laborers International Union of North America, Local 1140 ("Local"), was properly removed to federal court, and if so, (2) whether the district court[1] erred in holding that DeSantiago and Colton's complaint was preempted by a prior National Labor Relations Board ("NLRB") ruling, and that Devault's complaint was barred by his failure to bring suit within the six-month statute of limitations period of the National Labor Relations Act ("NLRA"), see 29 U.S.C. Sec. 160(b) (1988).
 
 I.
 
 2
 This dispute arose out of the Local's closing of its hiring hall in Council Bluffs, Iowa, where the plaintiffs were members, and the plaintiffs' later difficulty in finding and retaining work through the Local's hiring hall in Omaha, Nebraska, across the river from Council Bluffs. DeSantiago and Colton, along with other Council Bluffs members, submitted a petition to the Local's parent international union protesting the closure of the Council Bluffs facility. According to DeSantiago and Colton, the Local discriminated against them in its job referral system because of their support of this petition. They contend that during their second day on an Omaha job site, the contractor fired them and replaced them with members of the Omaha hiring hall at the Local's request, and that subsequently the Local "blacklisted" them from obtaining employment and failed to place their names on out-of-work lists. Devault's claim is that the Local ignored his complaints of unsafe working conditions at an asbestos removal site and later failed adequately to represent him when his employer discharged him allegedly in retaliation for reporting safety violations to state officials.
 
 
 3
 After DeSantiago and Colton filed an unfair labor practice charge with the NLRB, the NLRB regional director issued a formal complaint against the Local. This complaint charged that the Local had engaged in unfair labor practices under section 8(b)(1)(A) of the NLRA, 29 U.S.C. Sec. 158(b)(1)(A) (1988), by restraining and coercing DeSantiago and Colton in the exercise of their rights guaranteed under section 7 of the NLRA, 29 U.S.C. Sec. 157 (1988). It was also alleged that the Local engaged in unfair labor practices under section 8(b)(2) of the NLRA, 29 U.S.C. Sec. 158(b)(2) (1988), by causing employers to discriminate against them in violation of section 8(a)(3) of the Act, 29 U.S.C. Sec. 158(a)(3) (1988). The complaint stated that these violations occurred as a result of the Local's (1) failure to register and refer DeSantiago and Colton for employment, (2) refusal to enforce provisions of collective bargaining agreements by failing to make job site visits; and (3) conduct in bringing about their dismissal from the Omaha job site discussed previously. The complaint was later amended, but the general allegations--that the Local was responsible for DeSantiago and Colton's dismissal from the Omaha job site and that it refused to refer DeSantiago and Colton for employment--remained the same.
 
 
 4
 After conducting a hearing with numerous witnesses, the administrative law judge (ALJ) found that the Local had engaged in unfair labor practices and ordered it to cease and desist from discriminating against DeSantiago and Colton in its job referral system, and to compensate them for any loss of earnings resulting from their discharge from the Omaha job site. The Local appealed this ruling to the Board, but later abandoned its appeal and complied with the ALJ's order.
 
 
 5
 While the NLRB proceeding was pending, DeSantiago and Colton brought suit in an Iowa state court, contending that the Local had (1) intentionally interfered with their employment contract with the Omaha employer, (2) violated their rights under state "right to work" and "anti-blacklisting" laws, and (3) violated their rights to fair treatment and representation guaranteed under the local and international union constitutions. Devault, who had not filed a charge with the NLRB, joined in their complaint by alleging that the Local had infringed his rights to fair treatment and representation under the union constitutions as well.
 
 
 6
 After the case was removed to federal court pursuant to the federal question statute, see 28 U.S.C. Sec. 1441(b) (1988), the district court granted the Local's motion for dismissal of the complaint, or in the alternative, summary judgment.
 
 II.
 
 7
 On appeal the union members first contend that removal on the basis of federal question jurisdiction was improper.[2] Under the well-pleaded complaint rule, a district court has federal question jurisdiction if "a federal question is presented on the face of the plaintiffs' properly pleaded complaint." Caterpillar Inc. v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). The plaintiffs argue that their complaint properly alleges claims arising under only state law.
 
 
 8
 There is, however, an independent corollary to the well-pleaded complaint rule which holds that in certain circumstances the preemptive force of a federal statute is so "extraordinary" that it "converts" a complaint alleging only state law claims "into one stating a federal claim for purposes of the well-pleaded complaint rule." Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 65, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987). This so-called "complete pre-emption" doctrine, see Caterpillar, 482 U.S. at 393, 107 S.Ct. at 2430, has been recognized primarily in labor cases involving state law claims that are preempted by section 301(a) of the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. Sec. 185(a) (1988). See, e.g., id. at 393-94, 107 S.Ct. at 2430-31; Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968).
 
 
 9
 Section 301(a) provides, in pertinent part, that "[s]uits for violations of contracts between an employer and a labor organization ... or between any such labor organizations, may be brought in the district court of the United States...." 29 U.S.C. Sec. 185(a). This section has been found to preempt state law claims that are "founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.' " Caterpillar, 482 U.S. at 394, 107 S.Ct. at 2431 (quoting International Bhd. of Elec. Workers v. Hechler, 481 U.S. 851, 859 n. 3, 107 S.Ct. 2161, 2166 n. 3, 95 L.Ed.2d 791 (1987)); see also, e.g. United Steelworkers of Am. v. Rawson, --- U.S. ----, 110 S.Ct. 1904, 1909-10, 109 L.Ed.2d 362 (1990).
 
 
 10
 The plaintiffs argue that their state law claims are not preempted by section 301(a) because those claims are neither based upon nor require any interpretation of a collective bargaining agreement. It is alleged that the sources of these claims instead are local and international union constitutions and state statutes. Assuming but not deciding that none of the plaintiffs' claims is dependent upon analysis of a collective bargaining agreement,[3] we nevertheless conclude that the district court has federal question jurisdiction.
 
 
 11
 The Supreme Court has recognized that the preemptive force of section 301(a) is applicable not only to state law claims dependent upon analysis of a collective bargaining agreement but also to certain state law claims that are based upon provisions of a union constitution. As mentioned, section 301(a) creates federal court jurisdiction for both cases involving "violations of contracts between an employer and a labor organization," and lawsuits "between any such labor organizations." See 29 U.S.C. Sec. 185(a). This reference to intra-union disputes led the Supreme Court to hold in United Ass'n of Journeymen & Apprentices v. Local 334, 452 U.S. 615, 101 S.Ct. 2546, 69 L.Ed.2d 280 (1981) ("Journeymen ") that section 301(a) provides a basis for federal court jurisdiction when a local union sues its parent international union for violations of the international constitution. In reaching this decision, the Journeymen Court determined that "a union constitution is a 'contract' within the plain meaning of Sec. 301(a)." 452 U.S. at 622, 101 S.Ct. at 2550.
 
 
 12
 The Journeymen Court explicitly reserved the question whether section 301(a) creates federal court jurisdiction over suits brought by individual union members against their union for breach of the union constitution. See 452 U.S. at 627 n. 16, 101 S.Ct. at 2553. Since the Journeymen decision was rendered, however, at least three courts of appeals have held that federal courts have jurisdiction to hear such suits by virtue of section 301(a). See, e.g., Pruitt v. Carpenters' Local Union No. 225, 893 F.2d 1216, 1218-19 (11th Cir.1990); Lewis v. International Bhd. of Teamsters, Local Union No. 771, 826 F.2d 1310, 1312-14 (3d Cir.1987); Kinney v. International Bhd. of Elec. Workers, 669 F.2d 1222, 1229 (9th Cir.1982).[4] And courts have also determined that purported state law claims brought by union members against a local for breach of union constitutions are preempted by section 301(a) and therefore removable to federal court. See, e.g., Pruitt, 893 F.2d at 1219.
 
 
 13
 We find the reasoning of these cases to be persuasive. Because DeSantiago, Colton and Devault have all alleged claims against the Local based upon the local and international constitutions, we hold that those claims were preempted by section 301(a). A federal question was thus presented by the complaint, and the lawsuit was properly removed to federal court.
 
 III.
 
 14
 Having found that the district court had jurisdiction to hear this lawsuit, we now address the question whether the plaintiffs' complaint was properly dismissed. We first examine the DeSantiago and Colton claims and then turn to Devault's.
 
 A.
 
 15
 As noted, DeSantiago and Colton have already obtained redress from the Local pursuant to the NLRB proceeding. They argue, however, that they should be allowed to press their claims against the Local in a judicial forum as well.
 
 
 16
 In San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), the Supreme Court stated that "[w]hen an activity is arguably subject to Sec. 7 or Sec. 8 of the [NLRA], ... the federal courts must defer to the exclusive competence of the National Labor Relations Board...." Id. at 245, 79 S.Ct. at 780. Although this general directive has been refined somewhat in subsequent cases, it remains valid today. See, e.g., Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters, 436 U.S. 180, 202, 98 S.Ct. 1745, 1760, 56 L.Ed.2d 209 (1978) ("The primary-jurisdiction rationale unquestionably requires that when the same controversy may be presented to ... [a] court or the NLRB, it must be presented to the Board.").
 
 
 17
 One example of application of the Garmon doctrine is Local 100, United Ass'n of Journeymen & Apprentices v. Borden, 373 U.S. 690, 83 S.Ct. 1423, 10 L.Ed.2d 638 (1963), which involved a local's failure to refer for employment a member who had recently transferred to the local from a local in another city. The union member brought suit alleging claims strikingly similar to those brought by DeSantiago and Colton: he alleged "that the actions of the [local] constituted a willful, malicious, and discriminatory interference with his right to contract and to pursue a lawful occupation; that the [local] had breached a promise, implicit in the membership arrangement, not to discriminate unfairly or to deny any member the right to work; and that the defendants had violated certain statutory provisions." Borden, 373 U.S. at 692, 83 S.Ct. at 1425. The Court held that the complaint should have been dismissed because it "was focused principally, if not entirely, on the union's actions with respect to [the union member's] efforts to obtain employment" and "involved conduct arguably subject to the Board's jurisdiction." Id. at 697, 83 S.Ct. at 1427.
 
 
 18
 More recently, in Local 926, Int'l Union of Operating Engrs. v. Jones, 460 U.S. 669, 103 S.Ct. 1453, 75 L.Ed.2d 368 (1983), the Court held that a claim for interference with contract brought against a local was preempted by the NLRA under a rationale similar to that followed in Borden. The plaintiff alleged that the defendant-local had "procured" his discharge from employment because he "had not been a member in good standing" of the local. See id. at 672, 103 S.Ct. at 1456. The Court concluded that this charge was preempted because it was founded upon conduct "arguably within the ambit of Sec. 7 or Sec. 8." Id. at 677, 103 S.Ct. at 1459.
 
 
 19
 The success of DeSantiago and Colton in the NLRB proceeding clearly suggests that their charges in this suit are "within the ambit" of section 8 of the NLRA. We are unable to discern any significant distinction between the allegations found by the NLRB to constitute unfair labor practices under subsections 8(b)(1)(A) and 8(b)(2)--those allegations being that the Local caused DeSantiago and Colton to be dismissed from the Omaha job site and that the Local failed to accord them fair treatment and representation--and the allegations in this lawsuit. This striking similarity between DeSantiago and Colton's claims in the present case and their complaint in the NLRB proceeding leads us to conclude that their complaint in this case was properly dismissed by the district court because their claims were within the primary jurisdiction of the NLRB.
 
 
 20
 DeSantiago and Colton argue, however, that under the recent decision of Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6, --- U.S. ----, 110 S.Ct. 424, 441, 107 L.Ed.2d 388 (1989), their complaint should not be dismissed. In Breininger the Supreme Court held that a district court had jurisdiction to hear a union member's claim that his union breached its duty of fair representation under the NLRA by discriminating against him in the operation of its hiring hall. The Court rejected the argument that the claim was within the exclusive jurisdiction of the NLRB, relying upon the principle established in Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), that "Garmon's pre-emption rule does not extend to suits alleging a breach of the duty of fair representation." Breininger, 110 S.Ct. at 429. DeSantiago and Colton contend that, similar to the plaintiff in Breininger, they have alleged what is essentially a claim of breach of the duty of fair representation and therefore their claim may be adjudicated in a judicial forum, notwithstanding the teachings of the Garmon line of cases.
 
 
 21
 We disagree. First, we do not believe that the plaintiffs' claims may be properly characterized as a breach of the federal statutory duty of fair representation created by the NLRA (which was the Breininger plaintiff's allegation) when the complaint here alleges only a contractual basis for the duty of fair treatment. Even if the complaint in this case may be re-characterized as alleging a breach of the NLRA duty of fair representation, we do not find the reasoning of Breininger directly applicable here. The Breininger plaintiff had not filed an NLRB charge, much less already prevailed in a NLRB proceeding, as have DeSantiago and Colton. Thus, the Breininger Court was not faced with the situation presented here of a plaintiff having already obtained a remedy from the NLRB for the activities complained of in his lawsuit.
 
 
 22
 The Breininger reasoning may imply that if DeSantiago and Colton had not availed themselves of the NLRB proceeding a court would have had jurisdiction to hear their breach of fair representation claim. But we are unable to conclude that the plaintiffs at this stage may proceed with a court action, having elected to file a charge with the NLRB and having already obtained a remedy through the NLRB proceeding. The record indicates that DeSantiago and Colton had a full and fair opportunity for redress in the NLRB proceeding for the incidents complained of in this lawsuit. Given these circumstances, we believe that principles of res judicata require that their complaint against the Local be merged in the judgment of the NLRB and therefore that their claims in this lawsuit be dismissed. See generally United States v. Utah Constr. & Mining Co., 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966) ("When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose.").
 
 B.
 
 23
 Turning now to Devault's claim, we conclude that it was properly dismissed as well. His complaint is based upon a discharge from employment that took place on July 9, 1987. The period of limitations for the filing of his lawsuit is six months. See DelCostello v. International Bhd. of Teamsters, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) (holding that six-month period of limitations of section 10(b) of the NLRA should govern an employee suit against a union alleging the union's breach of its duty of fair representation). Devault did not file his complaint until February 26, 1988, more than six months after the discharge occurred. The complaint was therefore properly dismissed for failure to comply with the statute of limitations.
 
 IV.
 
 24
 In sum, for the reasons above stated, we conclude that this case was properly removed to federal court and dismissed. Affirmed.
 
 
 
 [1]
 The Honorable Donald E. O'Brien, United States District Judge, Southern District of Iowa
 
 
 [2]
 The parties lack diversity of citizenship, thus precluding the court from having jurisdiction pursuant to 28 U.S.C. Sec. 1332 (1988)
 
 
 [3]
 In holding that the action was properly removed, the district court found that the claims required interpretation of a collective bargaining agreement
 
 
 [4]
 Two circuits have held to the contrary. See Trail v. International Bhd. of Teamsters, 542 F.2d 961, 967-68 (6th Cir.1976); Adams v. International Bhd. of Boilermakers, 262 F.2d 835, 838 (10th Cir.1959). However, as the Lewis court noted, Trail and Adams were decided before Journeymen, and we agree with the Lewis court that the Journeymen analysis undercuts the reasoning and conclusion in those decisions. See Lewis, 826 F.2d at 1313-14 (discussing Trail and Adams )